UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD C. POE, II,** individually and derivatively for **DICK POE MOTORS, LP,** and **DICK POE DODGE, LP,** <br><br> Plaintiffs, <br><br> vs. <br><br> **FCA US LLC,** <br><br> Defendant. | 2:21-CV-11668-TGB-CI <br><br> HON TERRENCE G. BERG <br><br><br> **ORDER GRANTING MOTION TO DISMISS (ECF NO. 8)** |

    This case arises from a dispute over the ownership of a number of Texas auto dealerships. In brief, Plaintiff Richard Poe alleges that a number of his late father's advisors conspired in 2015 to seize control of several family-owned dealerships that would otherwise have passed to Richard. Cases against those advisors have been or are being litigated elsewhere. Now, Richard sues automaker FCA US LLC ("FCA"), the franchisor for two of the dealerships at issue. He sues on his own behalf and on behalf of the limited partnerships that own the dealerships. Richard alleges that FCA joined the advisors' conspiracy and committed various torts in an effort to seize control of the dealerships. But the Court will not reach the merits of Richard's claims, because each claim is barred by the relevant statute of limitations.

1

Defendant FCA has moved to dismiss Plaintiffs' complaint in its entirety, arguing that all claims are time-barred. ECF No. 8. The motion has been fully briefed and the parties gave oral arguments before the then-presiding judge, the Honorable Stephanie Dawkins Davis, on May 11, 2022.[1] For the reasons stated below, Defendant's motion to dismiss will be **GRANTED**.

## I. BACKGROUND

The following allegations are drawn from the Complaint. In 1928, Richard's grandfather opened what is now the oldest Chrysler dealership in Texas. ECF No. 1, PageID.7. The Poe family has owned and managed auto dealerships in Texas ever since. *Id.* Plaintiff Richard Poe II ("Richard") worked in the family trade, as did his father, Richard Poe ("Dick"). *Id.* Dick employed several advisors to assist him in managing the various Poe family businesses: Anthony Bock, a certified public accountant; Paul Sergent, a lawyer who advised Dick on legal and business matters; and Karen Castro, who "assisted [Dick] as his long-time personal assistant and then acted as the 'Comptroller'" for the dealerships at issue here. *Id.* at PageID.4-5, 9.

In August 2007, Dick, then 73 years old, formed a company called "PMI." *Id.* at PageID.8. Richard was issued 1,000 shares of PMI, and was

---

[1] The case was transferred to the undersigned upon Judge Dawkins Davis's appointment as Circuit Judge of the United States Court of Appeals for the Sixth Circuit on June 16, 2022. *See* Text-only docket entry of June 16, 2022.

2

the only shareholder. *Id.* Dick was the president and sole director of PMI, and Richard the vice president. *Id.* Sergent was PMI's secretary. PMI became the general partner of several Poe-family limited partnerships (the "Limited Partnerships") including Dick Poe Motors, L.P. (which owns a Dick Poe Chrysler/Jeep dealership in El Paso, Texas) and Dick Poe Dodge, L.P. (which owns a Dick Poe Dodge/Ram dealership in El Paso). *Id.* at PageID.2, 8. Through the Limited Partnerships, PMI controlled the two dealerships (the "Poe Dealerships").

Against this backdrop, Richard alleges that Bock, Sergent, and Castro conspired to "steal" PMI and the businesses PMI controlled away from Richard. *Id.* at PageID.9. On May 6, 2015—ten days before he died—Dick caused PMI to issue 1,100 new shares to himself in exchange for $3,209,205.[2] The share issuance had the effect of diluting Richard's ownership interest in PMI to 48% and assigning 52% to Dick. *Id.* at PageID.10. Dick died on May 16, 2015. *Id.* In accordance with Dick's will, Bock and Castro were appointed as executors of Dick's estate. *Id.* at PageID.11. Bock and Castro then appointed themselves directors of PMI,

---

[2] Richard vigorously contests the validity of this share issuance. After a May 2017 trial in El Paso Probate Court, a jury determined that the share issuance had violated Texas law. ECF No. 1, PageID.9-10. Judgment was issued in late 2017 and was affirmed by the El Paso Court of Appeals. *Id.* But on June 17, 2022, the Texas Supreme Court concluded that the Probate Court had issued erroneous jury instructions and remanded the matter for a new trial. *Matter of Est. of Poe*, No. 20-0178, 2022 WL 2183306, at *1 (Tex. June 17, 2022).

3

elected themselves officers of PMI, and re-elected Sergent as PMI's secretary—a position he had already held. *Id.* Richard alleges that Bock and Castro also "entirely removed Richard from functional control over PMI" and the dealerships PMI controlled. *Id.*

Richard alleges that FCA joined this conspiracy.[3] He alleges that FCA's usual practice when a dealership's "principal" dies is to send a "Notice of Dealer Death" package to the remaining management of the dealership. *Id.* at PageID.17. Richard says that on May 27, 2015, an FCA representative emailed Castro seeking updated contact information for Richard, who was listed as the remaining management of the Poe Dealerships. *Id.* at PageID.18. But Castro provided her own email address, and FCA used that for future communications with the Poe Dealerships instead of dealing with Richard. *Id.* at PageID.19-20. At some point thereafter, the alleged conspirators hired Gery Reckelbus to manage the Dealerships and, on August 10 and 12, 2015, asked FCA to replace Richard with Reckelbus as "principal" of the Dealerships. *Id.* at PageID.20-22. Richard says that he did not learn the "details" of Reckelbus's appointments until the May 2017 probate court trial. *Id.* at PageID.20.

Richard says that, although "it is not unusual" for such a change in management to take months, FCA approved Reckelbus within nine days

---

[3] Though the Complaint variously refers to "FCA" or "Chrysler," the Court will use "FCA" throughout this Order for consistency.

4

for one dealership and eleven days for the other. *Id.* at PageID.21-22. Richard also complains that the alleged conspirators stopped selling vehicle-protection products (such as extended warranties) that were reinsured by Richard's other businesses and instead sold FCA's version of those products, cutting Richard out. *Id.* at PageID.23-24.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court to dismiss a lawsuit if it "fails to state a claim upon which relief can be granted." Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though this standard is liberal, courts have held that it requires plaintiffs to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III. DISCUSSION

The parties agree that all of Plaintiffs' claims are governed by Texas law. *See* Compl., ECF No. 1, PageID.4, 25; Def's. Mot., ECF No. 8, PageID.59. Defendant FCA argues that each of Plaintiffs' claims are barred by the relevant statute of limitations.[4] Richard argues that two principles, the "*Hughes* rule" and the "continuing wrong doctrine," serve to toll the applicable statutes of limitations on all of his claims.

#### a. Count I

Plaintiffs' first claim is for a breach of the duty of good faith and fair dealing implicitly found in the Dealerships' agreements with FCA. Under Texas law, parties to automobile dealer franchise agreements owe one another a statutorily-created duty of good faith and fair dealing. Tex. Occ. Code § 2301.478(b). That duty is actionable in tort. *Id.* FCA appears to have missed that Richard seeks to assert his claim as arising under

---

[4] FCA also argues that Richard may not bring derivative claims on behalf of the Limited Partnerships, that Plaintiffs' fraud claim is inadequately pleaded, and that Plaintiffs' tort claims are barred by the economic loss rule. Because all of Plaintiffs' claims are barred by the relevant statute of limitations, the Court will not address these other arguments.

6

statutory law, and argues that Texas case law does not imply such a duty in contracts. Accordingly, while FCA is correct that Texas courts have rejected the implication of a general duty of good faith and fair dealing in each and every contract, *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000), in this particular context there is such a duty—one created by statute.

At the hearing held on this motion, the parties also raised, for the first time, the possibility that the Texas Motor Vehicle Board might have exclusive jurisdiction over this claim—at least in the first instance. *See* Transcript, ECF No. 21, PageID.194-96. There is some statutory basis for that argument. *See* Tex. Occ. Code § 2301.151 ("The board has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction."). And at least one federal court has concluded that, whether sitting in diversity or applying supplemental jurisdiction, it lacked jurisdiction to hear claims over which the Motor Vehicle Board had exclusive jurisdiction. *Buddy Gregg Motor Homes, Inc. v. Marathon Coach, Inc.*, No. 4:08-CV-218-Y, 2008 WL 11429596, at *4 (N.D. Tex. Nov. 20, 2008). (citing *Subaru v. David McDavid Nissan*, 84 S.W.3d 212 (Tex. 2002)).

But the Court need not resolve this question because, in any event, this claim is time-barred. A claim brought under § 2301 of the Texas

7

Occupational Code may not be brought "after the fourth anniversary of the date the action accrues." Tex. Occ. Code § 2301.7025(b). Richard's claim accrued, at the latest, in May 2017 during the probate court trial, which was more than four years before this suit was filed.

In "rare" cases, the "discovery rule" may delay accrual of a claim until the injured party learned of, or should have learned of, the wrongful act causing the injury. *B. Mahler Ints., L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 49-50 (Tex. App. 2016). But the discovery rule is limited to circumstances in which the "nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 49. Knowledge of the injury, not of the specific cause of the injury or its full extent triggers claim accrual. *Id.* In contract claims, the discovery rule is rarely applied, because "diligent contracting parties should generally discover any breach during the relatively long four-year limitations period." *Id.* at 50.

Here, FCA allegedly breached its agreements in the summer of 2015, six years before this suit. And it is dubious whether the discovery rule should be applied at all. Richard alleges that he "did not learn about *the details* of [Reckelbus's] appointments" until the May 2017 probate trial. Compl., ECF No. 1, PageID.20. But as a businessman with a direct and active interest in the management of the dealerships, Richard was no doubt aware, or at minimum should have been aware, as early as late 2015 that he was not actually managing the Dealerships and that,

8

therefore, FCA must necessarily have approved someone else to do the job.

But even if the discovery rule was applied because, arguably, Richard may not have understood the allegedly tortious details of FCA's conduct surrounding the Reckelbus appointments, Richard alleges that he learned "the details of" Reckelbus's appointment in May 2017, more than four years before he sued FCA in July 2021. Therefore, the discovery rule is of no help to him. Accordingly, Richard's claims are time-barred absent some exception to the statute of limitations. Richard identifies two possible exceptions: first, the "*Hughes* rule," which Richard says tolls the statute of limitations in certain cases where there is pending related litigation; and second, the "continuing wrong" or "continuing tort" rule which Richard says tolls the statute of limitations based on a "continuing wrong" until the wrong ceases.

### i. The tolling rule set out in *Hughes v. Mahaney & Higgins* is inapplicable.

The "*Hughes* rule" stems from *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991), an attorney malpractice case. There, an attorney was sued for malpractice he allegedly committed in another suit while that suit—in which the malpractice allegedly occurred—was still pending on appeal. The Supreme Court of Texas explained that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice

9

claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Hughes*, 821 S.W.2d at 157.

From *Hughes*, Richard draws the general principle that, where "the outcome of a second cause of action is dependent on the resolution of another pending case, 'limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first." Resp., ECF No. 13, PageID.128 (quoting *Hughes*, 821 S.W.2d at 157). Richard says the validity of the share issuance "holds great legal significance with deep implications for the viability of the present case." ECF No. 13, PageID.129-130. Accordingly, Richard argues, the statute of limitations ought to be tolled while the share issuance is litigated in the Texas state courts.

For two reasons, the Court is not persuaded by Richard's *Hughes* argument. First, Texas courts have repeatedly emphasized that *Hughes* applies only in the malpractice context: "*Hughes* tolling is animated by several policy considerations unique to malpractice claims, but it is a 'clear and strict,' 'categorical,' and 'bright-line rule' applicable only to the category of legal-malpractice claims falling within the articulated paradigm." *Erikson v. Renda*, 590 S.W.3d 557, 559 (Tex. 2019).[5]

---

[5] Richard also points to several cases cited in *Hughes*, and argues that the *Hughes* rule is merely the latest in a line of cases, some outside the malpractice context. *See* Resp., ECF No. 13, PageID.129 (collecting cases). Reviewing the cases Richard identifies, the *Hughes* court and

10

Second, the policy concerns animating the *Hughes* decision are absent here. The purpose of relaxing the statute of limitations in a *Hughes*-type case is to "prevent a client from having to argue in her

---

other Texas courts have held that equitable principles toll the statute of limitations "where a plaintiff is prevented from exercising a legal remedy by the pendency of legal proceedings." *El Pistolon II, Ltd. v. Levinson Alcoser Assocs., L.P.*, 627 S.W.3d 494, 499 (Tex. App. 2021), (quoting *Hughes*, 821 S.W.2d at 157). This has been described as the "legal impediment rule." *Id.* But that logic applies where a plaintiff is *prevented* from filing a subsequent lawsuit; "having to assume inconsistent contentions in two contemporaneous lawsuits is not commensurate with preclusion from exercising a legal remedy." *Ellis v. Edward Abstract & Title Co.*, No. 13-98-578-CV, 2000 WL 35721235, at *4 (Tex. App. May 11, 2000). Instead, a "legal impediment" preventing the filing of a subsequent suit may arise where a person is barred by an injunction, a bankruptcy stay, or a similar operation of law. *Id.* For Richard, litigating both his suit against FCA and his suit against the alleged conspirators at the same time would not have forced him to take inconsistent positions. But even if it did, he "could have avoided this by requesting the court to abate the [case against FCA] pending resolution of the [underlying] suit," thereby preserving his claims. *Murphy v. Campbell*, 964 S.W.2d 265, 272 (Tex. 1997). As courts applying Texas law have explained, "[r]equiring a party to timely assert its claims against others to avoid stale claims [] is neither duplicative nor burdensome," *Dynamic Prod., Inc. v. CIMA Energy Ltd.*, No. 4:17-CV-01032, 2018 WL 1801193, at *14 (S.D. Tex. Feb. 21, 2018), report and recommendation adopted, 2018 WL 1870554 (S.D. Tex. Apr. 19, 2018), and "[w]hile it may be necessary to abate a [second lawsuit] pending resolution of [the first law suit], [the Texas Supreme Court] view[s] that procedure as preferable to holding that limitations on a plaintiff's claim begins to run when plaintiff decides it should." *Dynamic Prod.*, 2018 WL 1870554 at *4 (quoting *Murphy*, 964 S.W.2d at 273.). Indeed, nothing appears to have prevented Richard from filing a suit against the alleged conspirators in a Texas federal court four years before he sued FCA here. *See Poe v. Bock*, No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *1-3 (W.D. Tex. Sept. 7, 2018).

11

underlying lawsuit that her attorney did not err or that the attorney's error did not impact the outcome of the lawsuit, while arguing at the same time in her legal-malpractice suit that her attorney did err and the error harmed her underlying suit." *Gandy v. Williamson*, 634 S.W.3d 214, 239 (Tex. App. 2021). Requiring Richard to litigate this case while the other case is still pending would not force Richard to adopt mutually inconsistent positions here and in the underlying Texas litigation. In both cases, Richard has argued that the share issuance was invalid and that any decisions it purportedly authorized—such as Castro and Bock's communications with FCA and control of the Poe Dealerships—are invalid too. *Hughes* tolling does not apply here because the concerns that animated *Hughes* are absent and, in any event, *Hughes* applies only to malpractice claims.

### ii. The continuing tort or continuing wrong doctrine is inapplicable.

Richard says that the "continuing wrong" doctrine applies to all of his claims. At least one Texas appeals court has held that a cause of action for a "continuing tort" does not accrue until the defendant's tortious conduct ceases. *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App. 1994). Richard says that FCA's approval of Reckelbus was "merely a step in a long series of misconduct continuing until the present day." Resp., ECF No. 13, PageID.133. FCA, for its part, points out that the Texas Supreme Court has "neither endorsed nor addressed the

continuing-tort doctrine." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) (internal marks and citation omitted). And, as the Texas Supreme Court observed in *Rincones*, lower courts in Texas have applied the continuing-tort doctrine in limited categories of cases: those involving false imprisonment, negligent infliction of emotional distress, and continued use of injury-producing medicine. *Id.*

To determine whether a tort is a continuing one, Texas courts take care to distinguish between (1) "repeated injury proximately caused by repetitive wrongful or tortious acts," which is a continuing tort; and (2) "continuing injury arising from one wrongful act," which is not. *Rogers v. Ardella Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App. 2005). The *Rogers* court provided an example of what a continuing tort *is not*:

> a continuing tort does not arise from one's copyrighting a song that another wrote and then repeatedly selling the song and reaping profit from each sale. While it may be said that the injury continues with each sale and receipt of a royalty, the act that caused the continuing injury was the one act of copywriting the song.

*Id.* (internal citation omitted). That example closely resembles the explanation Richard's counsel gave at the hearing in this matter when explaining why FCA's alleged conversion was a continuing tort:

> So every few weeks, [the Dealerships] get more cars. They get more new office supplies, and the chattels in the case anew [sic] every once in awhile. So those chattels, the new ones that the dealership

13

> acquired, we don't have control over that. We've been denied control over that. So it would be false to say that the conduct stopped in 2015, because we have new property that we are denied control over, you know, going all the way up to the present date.

Hearing Tr., ECF No. 21, PageID.180. Ultimately, the damages Richard complains of stem from a series of actions taken in mid-2015: that FCA chose to communicate with Bock and Castro instead of Richard and approved Reckelbus as principal for the Dealerships instead of Richard using allegedly erroneous procedures.

It would negate the statute of limitations entirely if a plaintiff could merely allege that a tort has continued because an alleged tortfeasor refuses to reverse an allegedly wrongful decision it made in the past. *See Matter of Hoffman,* 955 F.3d 440, 444 n. 3 (5th Cir. 2020) ("the Hoffmans argue that the continuing tort doctrine applies here because the horses were never returned . . . the search and seizure here—a single incident—does not amount to a continuing tort, one which would forever suspend the statute of limitations absent the horses' return."). So too here. The statute of limitations cannot be refreshed every time one of the Dealerships obtains a new car, purchases a new pack of pens, or sells one of FCA's own extended warranty products instead of Richard's.

Ultimately, the continuing tort doctrine is "rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury."

14

*Rincones*, 520 S.W.3d at 592. Accordingly, if Richard "had discovered his injury and its cause, the rationale for the continuing-tort rule would no longer apply, and the statute would commence to run" at the point of discovery. *Upjohn*, 885 S.W.2d at 544. And the "fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run." *Rincones*, 520 S.W.3d at 593 (citation and internal marks omitted). Here, Richard cannot invoke the continuing-tort doctrine because, as he admits, he learned the details of FCA's decision to approve Reckelbus as principal for the Poe Dealerships no later than May 2017. Accordingly, the statute of limitations has expired and Richard's claim is time-barred.

### b. Count II

Plaintiffs' second claim is for breach of contract. The statute of limitations for breach of contract claims in Texas is four years. *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993) (citing Tex. Civ. Prac. & Rem. Code § 16.004). A breach of contract claim accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Richard alleges that FCA breached its contracts with the Poe Dealerships by approving Reckelbus as dealer principal instead of Richard. Compl., ECF No. 1, PageID.26. Castro and Bock sought FCA's approval for the change as early as May, 2015, and FCA approved Reckelbus in August, 2015. *Id.* at PageID.22. Richard alleges that he was unaware of Reckelbus's appointment until the May 2017 trial conducted in probate

15

court. *Id.* at PageID.20. The same arguments about *Hughes* tolling and the continuing wrong theory apply with equal force here, and Richard's claim is time-barred.

### c. Count III

Plaintiffs' third claim is for tortious interference with the Dealership Sales and Service Agreements. Compl., ECF No. 1, PageID.27. The limitations period for tortious interference with contracts is two years and accrues "when a wrongful act causes some legal injury, when facts come into existence that authorize a claimant to seek a judicial remedy, or whenever one person may sue another." *Lazo Techs., Inc. v. Hewlett-Packard Co.*, No. 05-14-01060-CV, 2016 WL 80952, at *2 (Tex. App. Jan. 7, 2016) (citing Tex. Civ. Prac. & Rem. Code. § 16.003). The conduct giving rise to this claim seems to be the same conduct underpinning Count I and Count II. Accordingly, the same logic applies and this claim is time-barred.

### d. Count IV

Plaintiffs' fourth claim accuses FCA of tortiously interfering with three business relationships: Richard and the Dealerships' relationships with PMI, PMI's relationship with the limited partners of the Limited Partnerships, and Richard and the Dealerships' relationships with prospective Dealership customers. In Texas, such a claim must be brought within two years of accrual. *First Nat. Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986). Like Plaintiffs' other tortious

16

interference claim, the claim alleged in Count IV accrued no later than May, 2017, and is now time-barred.

### e. Count V

Plaintiffs' fifth claim is fraudulent concealment and fraud by nondisclosure, and accuses FCA of failing to communicate with Richard and "secretive actions such as replacement of management for the Dealerships without Richard's knowledge or consent." Compl., ECF 1, PageID.29. Such claims are subject to a four-year statute of limitations in Texas. Tex. Civ. Prac. & Rem. Code § 16.004. A fraud claim accrues when a plaintiff knows or, with the exercise of reasonable diligence, should have known of the wrongful act and resulting injury. *Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 447 (Tex. App. 2002). At the very latest. Richard knew of FCA's actions by the May 2017 trial. Accordingly, the statute of limitations had run on this claim before Plaintiffs filed suit.

### f. Count VI

Plaintiffs' sixth claim accuses FCA of conversion. Plaintiffs say that FCA joined Bock, Castro, Reckelbus, and Sergent's conspiracy and is therefore liable for "wrestling away dominion and control over PMI from Richard," and converting the physical chattels owned by the Dealerships (cars, office supplies, and other chattels). Compl., ECF No. 1, PageID.30. The statute of limitations for conversion under Texas law is two years, and begins to run at the time of the unlawful taking. *Conoco, Inc. v.*

17

*Amarillo Nat. Bank,* 14 S.W.3d 325, 327-28 (Tex. App. 2000). The alleged conversion took place in 2015 and Richard became aware, at the very latest, in May 2017. Accordingly, the two-year period expired before this suit was filed.

### g. Count VII

Plaintiffs' seventh claim is for civil conspiracy, and alleges that FCA conspired with Castro, Bock, Sergent, and Reckelbus to commit the torts alleged in the complaint. Civil conspiracy is not an independent tort and does not have its own statute of limitations. *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC,* 580 S.W.3d 136, 142 (Tex. 2019). Accordingly, the statute of limitations for this claim depends on those of the torts alleged to be the objects of the conspiracy. *Id.* Because all of those torts carry a two or four-year statute of limitations and are time-barred, so is Plaintiffs' conspiracy claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant FCA's Motion to Dismiss is **GRANTED WITH PREJUDICE** with respect to all claims.

**IT IS SO ORDERED.**

Dated: September 27, 2022

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

18